Good morning, Your Honors. May it please the Court, I'm George Burns, the appellant, Capital Pacific Holdings. Excuse me, Mr. Robert. Good place is up in that mezzanine. You know, they've got those little rooms with phones. Yes. Make sure the phones are working, though. And remove the tap. Go ahead, Mr. Burns. Thank you, Your Honor. It's Friday. We've been here a long time. Been a long week. I only feel bad that my presentation can be nowhere nearly as interesting as the last one. I'm here on an insurance coverage case. We'll figure out how to do it. Don't worry. This is a case of first impression, Your Honor, because it involves a unique type of insurance policy. In this case, we ask the Court to broadly construe the terms of this insurance policy in favor of members of a homeowners association who get sued when they act for the benefit of the association. How do you handle the problem with the definition where it talks about the fact that they have to be acting in a voluntary capacity? Well, it is undisputed in this case that my client was not paid anything for the actions that it was sued for. You could contrast that, for instance, with a property management company who has a contract with the homeowners association. But correct me if I'm wrong. The employees of the developer were understandably placed on the homeowners board when the project was first opened by necessity. So isn't that part of their paid duties as employees of the owner of the project? And aren't they really carrying out those functions as a compensated duty for their employer? I understand your question. Below, we argued two theories as to why there was coverage or potential for coverage. On appeal, we abandoned that theory. We are only seeking coverage as an insured under the definition of, it's a three-part test, a member of the homeowners association. It's stipulated that we're a member of the homeowners association. Two, acting at the direction of its board on behalf of the homeowners association. Three, in a voluntary capacity. That is taken from the insuring language. So number one, we are a member of the homeowners association. That's agreed. Number two, was my client sued for acting at the direction of the board of the homeowners association? We introduced unrefuted evidence that the claim against my client was that we were the agent of the homeowners association. Paragraph seven of the underlying complaint expressly pleads that in all acts that we were sued for, we acted as the agent of the homeowners association. Now, under settled insurance law, that should settle the issue right there. You take the allegations in the complaint, whether they are false, whether they're silly, whether they're fraudulent, it doesn't matter. If you get sued for something that is potentially within the policy, there is a duty to defend, and that's all we have asked for in this case. Now, is the lawsuit based on any recorded instruments? It's the lawsuit based on any recorded instruments. This is a waiver, isn't it, to violate lot lines and back lines? Yes. What happened was the complex has built. Let's start with it. We had raw land to start with. Correct. And the developer plats it and records the plat, right? Correct. And it has restrictive covenants, right? Correct. And the homeowners association is the guardian of these protected rights. Correct. But it's not the homeowner that adopted the plat. Correct. So the grantor of the plat is the party that has to release the conditions for any subsequent person who has an interest in those restrictions by reason of purchasing a lot, right? Technically, as a practical matter, probably so, as a technical matter, the homeowners association could vote to change what we're talking about is not the lot line being moved, but simply the setback requirement. And the fact that the neighbor says it's okay to move the setback is obviously persuasive to the homeowners association board when it votes on the decision whether or not to allow any person to build within that setback encroachment. And the evidence in this case was that it happened about 90 times. Again, do the restrictions in the plat give to any party in the plat, any party owner of property in the plat a cause of action against a lot owner who violates the covenant? No, which is why the suit was brought. Well, I won't speculate why the suit was brought. But I do not believe that there would be a direct cause of action against a fellow member for violating the CC&Rs. And that claim was brought in this case, and the claim was defeated by a pretrial motion, a motion right during trial directed verdict type motion. But that was the theory of the complaint. Can compliance be compelled by a lawsuit? In other words, you get an injunction or a mandatory injunction requiring the person to move the house back from the lot line two feet or whatever the case may be. Technically, that theory might be available. Yes. But I don't see where the homeowners association has any contractual or legal interest in enforcing the covenants. The homeowners association is charged with the obligation to enforce the covenants in the recorded covenants? Correct. And the theory in the case was that the homeowners association violated its duty to the one homeowner by refusing to enforce the CC&Rs against the other homeowner. And the theory in the case, as it affected my client, was that my client was the neighboring, was the predecessor owner of this particular lot who had, in fact, allowed the neighbor, by writing the letter saying it's okay to have a variance to the lot line adjustment, by allowing the neighbor to build this gargantuan house on the property. So the claim was that my client had violated the CC&Rs by doing that. The plaintiff's alleged they had a direct claim for breach of CC&Rs against the predecessor owner. Your client's an adjacent homeowner, right? That's correct. My client is the developer of the property and was the homeowner, the landowner of the property, then then sold the property to the Cooks, the plaintiffs in the underlying lawsuit. The Cooks move in. They discover that the neighbor has been given permission to build a large house that will block their view. The Cooks then sue the homeowners association for allowing this to happen. They say in violation of the CC&Rs. The building wasn't there when they moved in. That's correct. But the permission to build it, the Cooks alleged, had already been given. And the Cooks alleged. Is that permission, is that recorded? It was. The letter was on file with the building department, but there was not a recorded against the property amendment to the CC&Rs or anything like that. And the evidence below, in this case and in the underlying suit, was that on about 91 occasions, the developer and the board would work together to tweak the lot line adjustments to allow the houses to be built in a more aesthetically pleasing fashion so you don't just have houses in a row along the line. Hillside. It's a hillside community, exactly. You never know how the lots are going to come out. That's exactly correct. So for doing that, my client was sued for three theories, essentially. One was for failing to disclose this information to the buyer, which we do not claim there was coverage for, but the other claims in the complaint that this was a breach of duty, a fiduciary duty, and that it was a breach of the CC&Rs. Now, it's stipulated that this was a covered, wrongful act under the policy because the insurer did defend the co-defended homeowner association. So, again, we aren't talking about whether my client's a member. That's agreed. We aren't talking about whether the underlying lawsuit was a covered claim. That's agreed because they defended our co-defendant. The only issue in the case, in this Declan Heath case, is whether the complaint sued my client for acting at the direction of the HOA board in a voluntary capacity, the insuring language. If it did, then we're an insured, and we were entitled to a defense, just like the Homeowners Association. Alito, did that also apply, Mr. Burns, to the act of writing the letter to the Los Angeles building department? Because as I understood the briefing, that occurred several months prior to the official action of the committee approving the variance on the setback. It does apply. The evidence presented in the underlying motions to the district court here was that my client wrote this letter to the building department. Without that letter in hand, the architectural committee would not have the ability to approve the variance to the building. But I guess my question is based, and I think it was on Mr. Jensen's argument from his brief, that it seemed to me that the letter was written in the capacity of a representative of the owner of an affected adjoining lot, essentially attesting to the city building department that the adjacent owner had no objection to the setback. So is there a distinction? In other words, was the person who signed the letter wearing a different hat on the date that letter was prepared and might therefore be outside the terms of the coverage contrasted with his conduct several months later when he was wearing his, I don't know what it was called, the committee hat, I guess I'll call it? I understand the question. Let me explain it this way. You're a member of the association if you own property in the association. My client wrote a letter to the building department in its capacity as a building owner. I'm the neighbor. It's okay to build a bigger property. Without that letter in hand. You wrote the letter in its capacity as what? We owned the property. Yes. So we own this lot. The next-door neighbor wants to build a large house. Yes. In order for the architectural committee to approve that variance, the architectural committee can only approve aesthetic changes. If there is a technical legal impediment to something that you want to build on your property, the architectural committee can't wish it away. So there has to be a variance in place. The allegation in the complaint is that we did that as the agent of the board of the association. We wrote the letter in our capacity as a member. We wrote the letter not in the capacity of we developed the property, not in the capacity of we're sitting on the board, but we wrote the letter in the capacity of a member, i.e., someone who owns land within the association. But that would be true for every neighbor in the development. So the logical conclusion would be that Federal would be insuring every owner of a house in the entire subdivision if they were to sign such a letter approving a variance by somebody who wanted to build a bigger house. That is technically true. But remember, we agree that the underlying lawsuit raises allegations that are a wrongful act because Federal defended the board and the HOA that was charged with these things. But I'm sure that Federal would be quite surprised to learn that they had taken on a couple hundred additional insurers under your interpretation of the coverage language. Members of the Homeowner Association can be asked to do many things in a voluntary capacity. You can have a bake sale. You can have a party at your house. You can do a fundraiser. There's many, many things. You can be asked to write a letter. We were asked to write a letter. Kennedy. Which is essentially, in essence, waiving your rights to file a lawsuit to object if the building department approves the plans to the fact that your view is going to be blocked. But I'm having a hard time seeing how that is an action that is carried out to benefit the Homeowners Association. To put it a different way, let me look at the facts sort of skewed against your client, and that is your client wanted to sell as many of the lots as possible, so of course it would write a letter. That is the allegation in the complaint. Now, what we are talking about here is the motivation. You have to contrast that. I mean, the policy doesn't say the motivation for doing it. It says on behalf of. And we cite to several cases. Then that gets me back to the third element of the definition of coverage, because I don't see how that act, if it's being done for pecuniary gain in order to assist Capital Pacific in selling as many of the lots as it can and in maximizing its profits from the development, how is that acting in a voluntary capacity for the benefit of the Homeowners Association? Because it was not acting under compulsion or under contract. If I write a letter of reference for the son of a client, I'm clearly doing it on behalf of that person. I'm not being paid. I have my own motivations for doing it. But the policy doesn't say you have to get into the head of the person and ask why did that person do a voluntary act. It is agreed that we were not paid anything to do the act. Why does someone sponsor a bake sale for the association? Because they want to meet their neighbors. They have a motivation. Why does someone agree to do any number of things for the HOA? Because you want to get along with your neighbors. You're asking about the motivation for something. The policy, I believe, only speaks to whether or not you are being paid, i.e., the property developer, the architect, the accountants who work for the association under a contract under which they receive compensation. They are not covered. And again, we are talking about some fairly fine distinctions where we all know that the insurance law is the insurer can write this policy any way they like, and all of these ambiguities, and that's all we're talking about is ambiguities, are going to be construed in favor of my client. And I think If your client is really, you know, well, your client's membership in the homeowners association arises from the number of lots that have been sold? Well, there's two reasons. One, the CC&Rs directly say that the developer is a member of the association. It's just right in the CCRs. Second, anybody who owns property, we pay real property taxes on these lots. We're just like any other homeowner. And I think, candidly, I think that's what the district court had trouble getting its arms around in this case. It said it is unusual. I know that people think, well, this policy is probably written for individuals because they don't think of the fact that corporate entities also own property in the association. But we are members, and if the insurance company wanted to write that you had to be a natural person to have coverage, they could have put it. But this is How many members are in the association? A couple hundred. It's a fairly large development up in Mulholland. And the officers. And how many memberships does the developer have? They own all of them at the beginning, and then as the lots are sold off, it's down to a few. I believe, I mean, if you're asking today, I think the development is completely sold out. Now, the association is not a party to this litigation. Not to this litigation, because the insurer defended the association in the underlying lawsuit, which is exactly my point. We aren't talking here about the nature of the underlying claim against my client. It was a wrongful act, as defined by the policy. The insurer defended the association. All we're talking about is whether or not the allegations of the complaint and the presented at trial bring my client within the definition of an insurer. And I would ask just that this is an insurance policy that must be broadly construed in favor of the membership of the homeowners association. It's an important issue for people who live in homeowners associations. Yes, it's unusual that this comes up on a situation where the member here was a non-natural person, but was a member nonetheless and must be treated as any other member of the association. If there's no other questions, thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Gilbert Jensen, and I represent Federal Insurance Company. We're involved here with a director and officer liability policy, and it is tailored for homeowners associations. It covers a selected group of insurers for certain — for actions taken within certain capacities. It protects the directors and officers. The directors and officers were not parties to the underlying lawsuit. It protects the homeowners association itself, the entity. Is that a corporation or an unincorporated association? I believe it's a mutual benefit corporation, which is — It has corporate status, and it acts through a board on a majority vote of the trustees or board members? It acts on — through the actions of the board of directors that are selected by that. So the act of an individual is not an act of the corporation? Correct. However, to the extent that the corporation, the homeowners association, is a party to a lawsuit, it is an insured under the Federal policy. And the entity itself, the homeowners association, Mulholland Park, was a defendant in the underlying Cook-Heisley action, and Federal stepped in and provided that entity with a defense and indemnified it when the matter was settled at trial, or just before trial. What this policy does not cover are other entities. It covers persons. And I'd like to draw the Court's attention to the insuring agreements in the Federal policy and specifically the definition of insured, which was changed by an endorsement that was added to the policy at the time of the policy's inception. And this is at the excerpts of record at page 52. Insured means the association named in item one of the declarations page. That is the Mulholland Park Homeowners Association. And, and this is where we get to whether or not capital specific is a insured under the policy, any person who has been, now is, or shall become a duly elected director or trustee, that's not involved in this case, a duly elected or appointed officer, not involved in this case, an employee or committee member, whether or not they are salaried, not involved in this case, and any members of the association acting at the direction of the board of directors on behalf of the association in a voluntary capacity. Going back to the beginning of this listing of, of who is an insured, it is a person who is a member. What is a person, undefined term in this policy, and capital specific has made the argument that person as an undefined term, federal could have used the term natural person. I'd like to draw the court's attention to the fact that capital specific has used the term person as being distinct and separate from corporate entities. In particular, the CC&Rs, which are part of this lawsuit, it's in the record at page 130, article three, section one, membership of the association. Membership is every person or entity who is a record owner shall be a member. Capital specific is not a person, it's an entity, and it's a member as an entity. The CC&Rs also use a similar dichotomy between human beings and corporate entities. Human beings or persons and corporate entities in a subsequent section, section seven, subsection two, which is at the record of page 139. It has to do with who can be on the board of directors. The board of directors shall consist of seven persons, not entities, seven persons. It notes that directors must be owners or the nominee of a corporate owner. Corporate owner in this case is capital specific. It is not a person. It does not qualify as an insured for that reason. As Judge Talman had pointed out in his questioning, there is no indication that the act complained of by Cook Heisley against capital specific was taken in a voluntary capacity. Capital specific was trying to unload these units. It purchased this matter out of bankruptcy, this whole development out of bankruptcy. And at the beginning when it purchased it, there were only two homeowners. One was the next door neighbor to Cook Heisley, the Tomassians. They purchased from the original developer. They had plans for a big house. After capital specific took over the development, they were asked as the owner of the next door lot, the one that eventually was purchased by Cook Heisley, to grant a variance on the side yard setback. The variance is something that is required by the city of Los Angeles. And the letter that's involved in this case, and the only book that capital specific claims, entitles it to any defense coverage, is a letter written on the letterhead of J.M. Peters, a division of CPH, to the city of Los Angeles. That letter, which is at the record at page 304, is on CPH or J.M. Peters stationary. It's signed by an individual as vice president division manager for J.M. Peters Company, Inc. And it says that it's the owner of the lot next door to the Tomassian lot, and that they as the owner are waiving the side yard setback from 10 feet to 8 feet. It's noted at the very following page, which is attached to that letter, which is the application to the city of Los Angeles, that the developer, J.M. Peters, agrees that it is waiving the city required 10 foot side yard setback. And that was done. It was not done for the homeowners association. It was not done at the request or behest of the homeowners association. That was not an act by the homeowners association or by the board or by any insured. One of the issues that I'd like to address has to do with the capacity in which CPH acted in sending that letter. As the questioning to CPH indicated, it was being sent not as a director, not as anything other than the neighboring homeowner. The city of Los Angeles requires to waive a side lot variance, setback variance. The neighbors have to agree. And that's exactly what was done here. CPH, as the owner next door, we grant you the variance. How does that fit into the policy? The insuring clause of the policy requires that there be a wrongful act. We've heard that the federal has agreed there was a wrongful act because it granted coverage to the homeowners association. I strongly disagree with that. We're not talking about wrongful act of the homeowners association. We're talking about wrongful act of CPH. That's a defined term. The insuring clause of the federal policy provides that the company shall pay on behalf of the insured all loss which the insured shall become legally obligated to pay on account of any claim made against him for a wrongful act. Wrongful act is defined in the policy. And there's a capacity element to wrongful act. Wrongful act means any act, error, misstatement or misleading statement. And I'll continue on skipping some words to the heart of the problem. In the discharge of his duties to the association or any matter claimed against him solely by reason of his serving in such capacity, here we have heard from Capital Pacific that Capital Pacific was acting as a member and therefore an insured. This letter written to the city of Los Angeles does not say it's being written in the capacity of a member of the association discharging its duties to the association. It's the next door neighbor writing a letter granting a variance. CPH does not have and cannot claim that the Cook-Heisley lawsuit was against it for an act that it committed as a member of the association discharging its duties as a member of the association. Capacity has been an issue that has been raised in a number of insurance cases that have appeared before the Ninth Circuit. One of them is Bowie v. The Home Insurance, as pointed out by the Ninth Circuit in that matter. You can be an insured, but that doesn't mean you're an insured for all purposes. In Bowie, the particular defendants involved in the underlying lawsuit had been directors of two companies. One of those two companies had D&O Insurance that would cover that director. They were insured in his capacity as a director of that company. There was no similar policy for their acts as directors of the other company. They were sued in their uninsured capacity as directors of the other company. As noted by the Ninth Circuit, 923 F. 2nd, 708, the phrase duty to defend presupposes the existence of a lawsuit against an insured requiring a defense under the policy. The insurers have not unqualifiedly covered Bowie and Gregory, the two directors involved in that case, but rather only have covered them in their capacities as DMT officials, that is, the insured company. In the Bowie lawsuit, there was no coverage, there was no duty to defend, the directors were being sued for a capacity that was not covered by that particular insurance policy. The Bowie court also discussed Gray v. Zurich and its progeny and stated, no court has said that an insurer must defend an insured not yet named in an insured capacity as a defendant in a suit, even though the complaint could be so amended. We have that case here. If you examine the complaint and the first amended complaint against CPH and the Homeowners Association, there's no reference to a 1995 letter, there's no reference to a homeowner or a member agreeing to a variance. That was not part of the pleadings in this matter. What is alleged is that the Homeowners Association and CPH granted to the Tomasians the right to build a mansionized size house on their lot. That grant, according to the complaint itself, and there's nothing in the record to suggest that it was otherwise, didn't take place in 1995 when that letter was written by the neighbor to the city of Los Angeles. That letter was November 15 of 1995. Rather, as the complaint points out, the architectural committee of the Homeowners Association granted the Tomasians permission to build the mansion next door to the Cook-Heisley's in January of 1997, a year and a half later. There is no claim, as the district court found below, in the complaint that was the Federal was asked to defend by CPH, that there was an act, a wrongful act by CPH in agreeing to the variance in writing that letter to the city of Los Angeles in November of 1995. I'd like to also note that the insurer's duty to defend is determined at the time that the pleading is tendered or the defense is tendered to the insurer. And it's based upon the pleading and whatever other extrinsic facts are known or made known to the insurance company. There's nothing in the record to suggest that this letter, the November 1995 letter, was ever provided to Federal until the opposition to the motion for summary judgment that we brought in the case below. That was not something that was argued by the insurer as part of their request for coverage in this case. It was not an extrinsic fact known to Federal in analyzing its duty to defend. As this Court noted in Upper Deck v. Federal, the duty to defend is determined at the time of the tender by the pleadings and the extrinsic facts then known to the insurer. That simply wasn't the case in this case. Even if we grant all of the arguments to Plaintiff that they were acting as an insured in the capacity as an insured in sending that letter and that the complaint somehow could be read to include that, that was not part of the parcel of facts that were One problem that I have had in this case is a problem of connecting dots and in particular trying to determine how you get from being the neighbor who wrote a letter authorizing a variance to an insured person who is entitled to defense coverage based upon the Cook-Heisley family. The developer was sued for misrepresenting things when they sold their property to the Cook-Heisleys. They were sued for telling the Cook-Heisleys that the neighboring house was going to fit the Homeowners Association requirements, the Architectural Committee's purchase of the property. The Homeowners Association had approved through its Architectural Committee the mansion in the Tomasian Lane, February of 1997. There is no way to read the complaint or to try and generate a claim against capital-specific holdings based upon the pleading in this matter that would somehow cover them as doing an act at the direction of the Board on behalf of the Association as a person in discharge of its duties as a member to the Association. We would request that the Court affirm the granting of the summary judgment in this motion. If there are no questions, thank you. Thank you very much. Just briefly, Your Honors. The author of the letter gave a declaration below at page 301 of the record in which he expressly stated that he was on the Board at the time and that the letter was written with the full knowledge and assent of and at the direction of the Board of the HOA. And my client was sued as the agent of the HOA in the underlying lawsuit. Both those facts are undisputed. Is there any resolution of the Board that appears in the official records of the corporation? There is not, but there is no evidence to the contrary to Mr. Kaineman's declaration either. No. The question stated is that they were aware of something, not that they took action and approved it. Approved it specifically. His testimony was that it was at the direction of the Board and that he was on the Board at the time. But who was on the Board? Himself, another gentleman named Cummings, and a third gentleman whose name eludes me right now. And where were they from? They, two of them were employees of the developer, and I believe the third was an employee of the property management company. All right. So he had a pretty good stack deck, huh? The claim was that there was a conflict of interest. The fact of the matter is that every development that is built by a developer in the State, the Board is necessarily composed of employees of the developer at first because no one else lives in the development. So then as they sell off the lots. But again, construing the policy the way one must, all we are talking about here are ambiguities. The unrefuted evidence is we were sued for something that we did at the direction of the Board. It was alleged we acted as the agent of the Board. The letter was part of the evidence introduced at trial. I mean, you did something at the direction of the Board, but you were the Board. That is correct. So now the fact goes to whether my client did a bad thing or had a conflict of interest. The fact is those claims were thrown out at trial, so I guess they didn't. But that is beside the point. What we're talking about here is insurance coverage. But I guess the question that occurs to me, Mr. Burns, is whether or not an insured can somehow recharacterize the capacity of his acts by executing a self-serving declaration which indicates that his actions were taken at the direction of other interested directors who were his co-employees of the developer and the management company. If the fact is not refuted, the fact that my client may have acted with a conflict of interest is irrelevant. It's an insurance coverage case. I'm not sure it is irrelevant. I guess the question I'm asking is, I mean, this is a problem we run into sometimes when interested directors who have a financial interest in a transaction approve a transaction. And the SEC is now looking with a fairly dim view towards the propriety of that sort of approval. People get insurance coverage for doing bad things all the time. That's why you have to have insurance coverage. You can run a red light and hit someone. That doesn't mean you're not covered. Okay. I mean, I understand your point. I'm just not sure what the legal significance is when you've got this kind of a factual situation. I understand. Thank you for your time, Your Honor. Thank you very much. We're going to take a recess at this time. That's what he said.
judges: Pregerson, Beezer, Tallman